STATE OF CONNECTICUT *v.* DONALD C. BROWN
(11006)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued November 15, 1985—decision released March 11, 1986

*John Watson,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. The defendant, Donald C. Brown, was convicted by a jury of robbery in the first degree, in violation of General Statutes § 53a-134 (a) (4).[1] He was sentenced to a term of not less than five nor more than ten years. The defendant appeals from the judgment of conviction.

---

[1] General Statutes § 53a-134 (a) (4) provides: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

The defendant claims on appeal: (1) that the trial court erred in refusing to suppress statements made by the defendant in violation of his *Miranda* rights; (2) that the trial court erred in admitting testimony of uncharged misconduct of the defendant; and (3) that he was denied due process of law because the state failed to disclose exculpatory information.

The jury could reasonably have found the following relevant facts: On Friday, April 25, 1980, at approximately 10 p.m., the victim was driving his car on a New Haven street when he stopped at a corner and a young woman, Ann Marie, initiated a conversation with him. She entered his car and he drove to another location where they had sexual relations. In order to pay her, the victim turned on the inside light in his car, took money from his right pants pocket, and paid the young woman $20. The victim then drove Ann Marie to the Gemini Cafe in New Haven and they went upstairs to her room above the bar. They then went downstairs to the bar where the victim ordered a drink and Ann Marie went outside. The victim thereafter followed Ann Marie outside the bar and observed her engaged in conversation with the defendant. Ann Marie had told the defendant that the victim had some money and that they should take it. Ann Marie admitted that she was a prostitute and that she shared the room above the Gemini Cafe with the defendant. She testified that she had been living with him since 1978 and during that three year period she lived on the money she earned from prostitution. The defendant told her during that conversation that he would not rob the victim because he might have a gun. Subsequently, Ann Marie and the victim again went upstairs to her room. Shortly thereafter, the defendant entered the room, placed a gun to the victim's head, and demanded his money. The two men moved into the hallway outside the room and Ann Marie left the room, returned, and remained in the

room. Although the victim had a substantial sum of money in his back pants pocket, he did not give this to the defendant and the defendant did not request it. When the defendant went back into the room he told Ann Marie that the victim did not have any money. The victim testified that he was robbed of $80–$90.

The victim fled the scene and went to the nearest phone booth but it was occupied. He then drove to a cafe and called the police. Two officers responded and the victim related his version of the robbery, including descriptions of Ann Marie and the defendant.

On the following Monday, the victim arrived at the New Haven police department at the request of Detective Jerry Waller to look through trays of photographs in an attempt to identify the robbers. The victim was shown several trays, each containing anywhere from fifteen to three hundred photos of black males, but was unable to identify any photo as that of the defendant. The victim did identify a photo of a black female as Ann Marie.

The detective and the victim then drove to where the incident occurred and as they were approaching the Gemini Cafe the victim pointed out two persons in the rear doorway of the bar as the persons who had robbed him. Waller drove the unmarked police vehicle onto the sidewalk in front of the defendant and Ann Marie. Waller, who was in plain clothes, approached the pair, identified himself as a police officer and stated that he wanted to "talk to him in regards to a robbery." In response, the defendant then made the statements he later sought to have suppressed. The defendant and Ann Marie were arrested shortly thereafter.[2]

---

[2] Ann Marie had already pleaded guilty to robbery in the first degree in violation of General Statutes § 53a-134 in connection with this incident on September 17, 1980, but had not been sentenced as of Brown's trial.

## I

The defendant's first claim is that the statements made to Waller by the defendant shortly before his arrest were obtained in violation of *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966),[3] and the trial court erred when it denied the defendant's motion to suppress them. The defendant claims that the question posed to him by the detective amounted to a custodial interrogation and therefore the *Miranda* warnings should have been given.

Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda*: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation. *Miranda* v. *Arizona*, supra, 444. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* v. *Arizona*, supra; see *State* v. *Januszewski*, 182 Conn. 142, 158, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). Despite this definition of custodial interrogation, "[w]hat constitutes police custody for purposes of the *Miranda* warnings is not always self-evident. One thing is clear: the *Miranda* court was concerned with interrogation that takes place in a police dominated environment containing 'inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.' *Miranda* v. *Ari-*

[3] The defendant claimed constitutional protection under *Miranda* from the fifth amendment to the United States constitution as well as the Connecticut constitution, article first, § 8. Because the *Miranda* warnings have independent significance under the state constitution; *State* v. *Ferrell*, 191 Conn. 37, 41, 463 A.2d 573 (1983); our decision today rests not only on the mandates of the federal constitution, but also on independent state grounds. *State* v. *Toste*, 198 Conn. 573, 576 n.3, 504 A.2d 1036 (1986).

*zona,* supra, 467." *State* v. *Januszewski,* supra. In other words, "police officers are not required to administer *Miranda* warnings to everyone whom they question." *State* v. *Januszewski,* supra, 159.

A determination of whether the defendant was in custody must be based on the facts surrounding his statement to the police officer. On April 28, 1980, Waller and the victim drove to the bar where the robbery took place. As they approached the Gemini Cafe the victim pointed to the rear door of the bar where the defendant and Ann Marie were standing. The victim told Waller that he recognized them as the robbers. Waller had previously called for back-up support because the area in which he would be investigating had had a "few problems." Waller then proceeded to drive his unmarked police vehicle onto the sidewalk of the public street approximately six to eight feet from the front of the rear doorway. Waller was not in uniform but he did tell the two persons, later identified as the defendant and Ann Marie, that he was a police officer and that he was investigating a robbery that occurred on April 25, 1980. No weapon was displayed by Waller. At this point in time the statements sought to be suppressed by the defendant were made. The defendant asked if the victim was "Dasher" and when Waller replied "yes, do you know him?" the defendant stated that "the guy was crazy, nobody robbed him."[4]

"[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offer-

---

[4] It is not necessary to determine whether these statements are exculpatory or inculpatory because neither type of statement may be used when there has been a custodial interrogation without *Miranda* warnings. Custodial interrogation did not take place here. See *Miranda* v. *Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

ing in evidence in a criminal prosecution his voluntary answers to such questions." *Florida* v. *Royer,* 460 U.S. 491, 497, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). This court has stated that a " 'person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' *United States* v. *Mendenhall,* 446 U.S. 544, 553–54, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); *State* v. *Acquin,* 187 Conn. 647, 655, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983); *State* v. *Ostroski,* 186 Conn. 287, 291–92, 440 A.2d 984, cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982); *State* v. *Derrico,* 181 Conn. 151, 159, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980)." *State* v. *Young,* 191 Conn. 636, 651–52, 469 A.2d 1189 (1983). Because the defendant did not testify we do not know if he personally did not feel "free to leave." By looking to other relevant factors, it can easily be seen that a "reasonable person" would not have construed the incident as a custody situation.

The defendant argues that the fact that Waller drove his car onto the sidewalk to within six to eight feet of the defendant and Ann Marie and that he carried a portable radio with him when he left his vehicle would, under the circumstances, indicate to a reasonable person that he could not leave. Why Waller chose to drive onto the sidewalk instead of parking along the curb was not specifically adduced at trial.

The fact that Waller carried a portable radio with him when he spoke to the defendant would not, either alone or under these circumstances, contribute to leading a reasonable person to conclude that he was being restrained. Rather, to do so may have been proper police procedure in order to hear police broadcasts outside of the vehicle and to keep in touch with other per-

sonnel. The subjective intention of the police officer in this case to possibly detain the defendant, had he attempted to leave, is irrelevant except insofar as that may have been conveyed to the defendant. *United States* v. *Mendenhall,* supra, 554 n.6. "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer* v. *McCarty,* 468 U.S. 420, 442, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984). There is no evidence that the defendant himself believed that he was in custody or in danger of imminent arrest because of any action of the police officer. There was evidence, however, from Ann Marie that when she and the defendant exited the rear door, she spotted the victim in Waller's car and told the defendant that "that was the man." The defendant told her "not to run because they couldn't do nothing. They didn't have no proof." Ann Marie said that because of this "they stayed there."

We conclude, based on the totality of the circumstances, that the defendant was not in custody or deprived of his liberty in any significant way at the time the statements were given and that, therefore, *Miranda* warnings were not required at this time.[5] We need not, therefore, discuss the second prong of the defendant's claim that the statements were the result of police interrogation.

## II

The defendant's second claim is that evidence of uncharged misconduct of the defendant, by way of his relationship with Ann Marie, is inadmissible because

---

[5] In concluding that the defendant was not in custody, that he was not deprived of his freedom of action in any significant way, we need not consider whether these circumstances would amount to a detention under *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), an additional situation in which *Miranda* warnings are not required.

it was not relevant to any issue in the case and because its prejudicial effect outweighed any probative value. Prior to any objection by the defendant, the state had adduced evidence from Ann Marie that she was seventeen years old at the time of trial in 1981 and that she had been living with the defendant since 1978 in various places, including a room above the Gemini Cafe at the time of the robbery. Moreover, Ann Marie had also testified that during this same period of time she was a prostitute and that she lived on money she made by being a prostitute. At this point in the direct examination the defendant asked the court to excuse the jury in order to take up a pretrial motion.

The defendant asked that the state make a preliminary statement as to the purpose for which it intended to offer the evidence of uncharged misconduct.[6] The state then explained, and the trial court agreed, that it was necessary to establish a relationship between the defendant and Ann Marie to show why she would act in concert with him in regards to this robbery in the manner in which she did. Upon objection by the defendant that the prejudicial impact "far exceeds" any probative value, the trial court specifically noted that the "prejudicial effect in this case is slight, if any." The defendant's motion to exclude this line of questioning was overruled and an exception was taken. After the motion was overruled, the additional evidence that was elicited was that the defendant and Ann Marie had sexual relations while living together and that Ann Marie gave the money she obtained from prostitution to the defendant.

---

[6] The defendant claims in his brief that "this testimony presents [him] as guilty of promoting prostitution in the second degree (Conn. Gen. Stat. § 53a-87) over a three year period, and of promoting prostitution in the first degree (Conn. Gen. Stat. § 53a-86), sexual assault in the second degree (Conn. Gen. Stat. § 53a-71) and risk of injury to a minor (Conn. Gen. Stat. § 53-21) in the early period of the relationship." At trial, defense counsel did not refer to any specific statutory violations, but rather to possibly uncharged criminal behavior.

"The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court." *State* v. *Howard,* 187 Conn. 681, 684, 447 A.2d 1167 (1982); see also *State* v. *Tucker,* 181 Conn. 406, 416, 435 A.2d 986 (1980); *State* v. *McCarthy,* 179 Conn. 1, 22, 425 A.2d 924 (1979); *State* v. *Turcio,* 178 Conn. 116, 129, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980). "Evidence of other misconduct, although not ordinarily admissible to prove the bad character or criminal tendencies of the accused, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity. *State* v. *Falby,* 187 Conn. 6, 23, 444 A.2d 213 (1982); *State* v. *Barlow,* 177 Conn. 391, 393, 418 A.2d 46 (1979)." *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982); see *State* v. *Shindell,* 195 Conn. 128, 133, 486 A.2d 637 (1985). An additional permissible purpose for introducing uncharged misconduct is to "complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings." McCormick, Evidence (3d Ed. 1984) § 190; see *United States* v. *Masters,* 622 F.2d 83, 86 (4th Cir. 1980); *State* v. *Villavicencio,* 95 Ariz. 199, 201, 388 P.2d 245 (1964).

"We have adopted a two-prong analysis to determine the propriety of admitting evidence of other crimes or misconduct." *State* v. *Shindell,* supra, 134. "First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of other crime evidence." *State* v. *Braman,* 191 Conn. 670, 676, 469 A.2d 760 (1983).

The evidence of the relationship between the defendant and Ann Marie was relevant and helped to establish the reason why Ann Marie, a prostitute, would tell

the defendant, with whom she lived and to whom she gave her earnings, of the money in the victim's pants pocket and then expect him to commit the robbery. The evidence of the relationship, in which the defendant appeared to handle Ann Marie's money matters, lends credibility to her account of the robbery and would tend to make more plausible the reason she chose the defendant as the person to accomplish this robbery. There were factors operating against the credibility of Ann Marie besides her status as a prostitute—her own involvement in the crime and her undetermined sentence for the robbery at the time of the defendant's trial.

The second prong of our analysis requires a determination of whether the trial court abused its discretion in ruling that the probative value of the evidence outweighed its prejudicial impact. *State* v. *Howard,* supra, 687–88. Because the testimony of Ann Marie as to her age at the time she began living with the defendant and the fact that she subsisted on her earnings as a prostitute was already before the jury unobjected to, the additional facts adduced after the motion was overruled had little prejudicial impact. The additional facts, that she had sexual relations with the defendant and that she turned over her earnings to him, could fairly have been inferred from the earlier testimony. The probative value of the additional facts, however, while they could have been inferred from the previous testimony, served to explain and establish the nature of the relationship of Ann Marie, a prostitute, to the defendant. See *State* v. *Leecan,* 198 Conn. 517, 534, 504 A.2d 480 (1986).

The trial court, during its charge, also gave limiting instructions to the jury concerning the prior misconduct evidence, expressly prohibiting its use at all as evidence "of the defendant's guilt of the crime with which he [had] been charged." The trial court then stated that

such evidence could be used only to establish and describe the relationship between the defendant and Ann Marie. "Limiting instructions serve to minimize the prejudicial impact of prior misconduct evidence." *State* v. *Howard,* supra, 688; *State* v. *Ryan,* 182 Conn. 335, 338, 438 A.2d 107 (1980). On the basis of the record before us and the circumstances of the case, we cannot say as a matter of law that the trial court abused its discretion in admitting the prior misconduct evidence of the defendant.

## III

The defendant's final claim is that the defendant was denied due process of law by the failure of the state to disclose exculpatory information. We do not agree. The claimed "exculpatory" information that was not given to the defendant was that there was a pending criminal case in Superior Court in which the state's principal witness, Ann Marie, claimed to be the victim of a rape on June 30, 1978. In a motion for a new trial, following the jury verdict, the defendant claimed that he had learned that the "[d]efense counsel in that [1978] rape case intends to offer evidence that Ann Marie was working as a prostitute for someone other than the defendant, Donald Brown." In oral argument on the motion before the trial court the defendant did not expand at all on the allegedly contradictory defense strategy evidence to be offered in the 1978 rape case. In fact, the defendant did not argue this point to the court other than in his post-trial motion. In his brief to this court the defendant "concedes that the record below is inadequate to show that the State had or should have had knowledge of the second part of the information discovered by defense counsel, the evidence to contradict [Ann Marie's] trial testimony that Brown was her pimp." In light of that concession by the defendant and the assertion by the state that it did not have knowledge of the rape case defense strategy, we

examine the *Brady* claim only as to the allegedly excul-patory evidence of the rape complaint itself.[7] *Brady* v. *Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

The defendant made a general request for "[a]ny and all exculpatory information or materials." The state replied that it was not aware of any such evidence. Where only a general request is made, the defendant bears the burden of establishing that the failure to dis-close is a denial of due process. *Talamante* v. *Romero,* 620 F.2d 784, 788 (10th Cir.), cert. denied, 449 U.S. 877, 101 S. Ct. 223, 66 L. Ed. 2d 99 (1980); *State* v. *Doolittle,* 189 Conn. 183, 197, 455 A.2d 843 (1983). "This is a 'heavy burden.' " *State* v. *Doolittle,* supra, quoting *Wagster* v. *Overberg,* 560 F.2d 735, 740 (6th Cir. 1977).

"To prevail on a claimed violation of *Brady* and its progeny requires proof of: '(a) suppression by the prose-cution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materi-ality of the evidence.' *Moore* v. *Illinois,* 408 U.S. 786, 794–95, 92 S. Ct. 2562, 33 L. Ed. 2d 706, reh. denied, 409 U.S. 897, 93 S. Ct. 87, 34 L. Ed. 2d 155 (1972)." *State* v. *Doolittle,* supra. The evidence, although not disclosed by the state, was neither material nor favor-able to the defense.

The defendant's arguments for the favorable nature of this evidence are specious. To suggest, as the defend-ant does, that Ann Marie was "induced" to cooperate as a witness for the state so that it would then see her as "deserving of consideration" and "would vigorously prosecute" the rape case denigrates the state's attor-

---

[7] We need not decide whether knowledge of the rape complaint should have been imputed to the state's attorney in the defendant's case. It is irrele-vant, under the circumstances of this case, whether the state's attorney had knowledge of the rape complaint because it was not exculpatory evi-dence.

ney's office. "The state's attorney owes a duty to *all* the people." (Emphasis in original.) *State* v. *Cohane,* 193 Conn. 474, 502, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984). While recognizing that a state's attorney has discretion in determining "when, who, why and whether to prosecute for violations of criminal law"; *State* v. *Anonymous,* 36 Conn. Sup. 338, 339, 420 A.2d 910 (1980); such discretion is not exercised based only on the alleged moral character of a complaining witness but is exercised in good faith based on a variety of factors. The defendant's counsel, at oral argument on the motion, said that had he been permitted to cross-examine "concerning the fact that she is a complainant in a rape case while at the same time she told this jury she had been a prostitute for three years, I think there is a dramatic inconsistency between those two claims, and I think that would have affected her credibility substantially. . . ." Regardless of her status as a prostitute, the credibility of such a witness in a robbery trial, on the record before us, is not affected substantially, if at all, simply because she is also a complainant in a rape case. A "witness' sexual conduct does not, of itself, reflect upon his or her credibility." *State* v. *Mastropetre,* 175 Conn. 512, 519, 400 A.2d 276 (1978). "The notion that an unchaste woman cannot be raped has been wholly rejected. Even a prostitute should have a right to choose." *State* v. *Patnaude,* 438 A.2d 402, 407 (Vt. 1981). It has been a "long held view that prostitution is not relevant to credibility." *Commonwealth* v. *Joyce,* 382 Mass. 222, 231, 415 N.E.2d 181 (1981). "A woman's reputation for unchastity has no probative value because it is [not] relevant to her credibility as a witness . . . ." *State* v. *Green,* 260 S.E.2d 257, 264 (W. Va. 1979); see *United States* v. *Kasto,* 584 F.2d 268 (8th Cir.), cert. denied, 440 U.S. 930, 99 S. Ct. 1267, 59 L. Ed. 2d 486 (1978); annot., 94 A.L.R.3d 257, § 6.

In addition, the defendant did not demonstrate whether Ann Marie was living with the defendant or was a prostitute at the time the rape complaint was made *on* June 30, 1978. The only evidence at trial indicated that she began living with the defendant and turned to prostitution *in* 1978. We conclude, therefore, that the evidence was not favorable to the defense.

As for the defendant's claim that the evidence was material under the third prong of *Brady*, we look to the test articulated in *Agurs* for a general request: whether the defendant's conviction will be constitutionally flawed only if the omitted evidence creates a reasonable doubt as to his guilt that did not otherwise exist. *United States* v. *Agurs*, 427 U.S. 97, 112, 96 S.Ct 2392, 49 L. Ed. 2d 342 (1976); *State* v. *Doolittle*, supra, 198. The "omission must be evaluated in the context of the entire record." *United States* v. *Agurs*, supra. Despite the defendant's claim that the disclosure of the rape complaint would have allowed him to quickly learn of the possible defense strategy in that case, the pending rape case, standing alone, was not material to this case. In the context of the entire record, even if this material were relevant, it cannot be said that the omission would have created a reasonable doubt that did not otherwise exist. Nothing in the recent case of *United States* v. *Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985), persuades us that a different result is required. We conclude, therefore, that the defendant was not deprived of his right to a fair trial under the fourteenth amendment by the inaction of the state in apprising the defendant of this rape complaint because it was not exculpatory.

There is no error.

In this opinion the other judges concurred.