## STATE OF CONNECTICUT *v.* LOUIS C. FIOCCHI, JR. (6361)

DUPONT, C. J., SPALLONE and FOTI, Js.

Argued October 5, 1988—decision released January 17, 1989

*A. Paul Spinella,* with whom, on the brief, was *David K. Jaffe,* for the appellant (defendant).

*Vincent J. Dooley,* deputy assistant state's attorney, with whom, on the brief, was *Rosita M. Creamer,* assistant state's attorney, for the appellee (state).

Foti, J. The defendant appeals from a judgment of conviction,[1] after a jury trial, of unlawful discharge of a firearm in violation of General Statutes § 53-203.[2]

On appeal, the defendant assigns five reviewable[3] claims of error: (1) that the trial court improperly instructed the jury with respect to his justification defense; (2) that the trial court's instruction on his defense of mistake of law was confusing and misled the jury; (3) that the jury instruction, on the whole, was unfairly weighted in favor of the state; (4) that the trial court erred in refusing to suppress his oral statements made in violation of his *Miranda* rights; and (5) that the trial court improperly excluded evidence of a business record.

---

[1] The defendant was acquitted of the first two counts of the information, namely, cruelty to animals; General Statutes § 53a-247; and criminal mischief in the third degree; General Statutes § 53a-117 (a) (1).

[2] "[General Statutes] Sec. 53-203. UNLAWFUL DISCHARGE OF FIREARMS. Any person who intentionally, negligently or carelessly discharges any firearm in such a manner as to be likely to cause bodily injury or death to persons or domestic animals, or the wanton destruction of property shall be fined not more than two hundred fifty dollars or imprisoned not more than three months or both."

[3] The defendant makes two claims which are not reviewable because he failed to brief them properly. First, the defendant asserts that it was error for the trial court to deny his pretrial motion to dismiss because General Statutes § 22-358 provides a complete defense to the crimes charged. As a general rule, the denial of a motion to dismiss is not reviewable unless it involves a fundamental constitutional right. *State* v. *Ramos,* 201 Conn. 598, 601–602, 519 A.2d 9 (1986). In the defendant's scant analysis of this issue, he merely states that the trial court's denial of his motion was "arbitrary and capricious, and constituted an error of law." He does not even attempt to attach a constitutional label to his claim. The plaintiff has provided us with no legal authority or analysis in support of this claim. See

The jury could reasonably have found the following facts. The defendant lives in a rural section of Glastonbury and raises domestic animals on his property including a horse, a cat and approximately a dozen chickens. The defendant's neighbor, John Bunker, owned a four year old Brittany Spaniel named Blue. On at least three occasions in 1986, the dog was observed entering the defendant's property and attacking his chickens. On June 23, 1986, at approximately 7 p.m., the defendant saw the dog enter his property. He fired three shots at the dog, killing the animal. The defendant then moved the dog's body to an adjacent cornfield and called the police.

*State* v. *Hernandez,* 204 Conn. 377, 382, 528 A.2d 794 (1987); *State* v. *Smith,* 10 Conn. App. 624, 635, 525 A.2d 116, cert. denied, 204 Conn. 809, 528 A.2d 1156 (1987). We, therefore, decline to address this claim.

The defendant's second claim, that he was denied his right under the fifth and fourteenth amendments to the United States constitution to present a defense, is similarly not reviewable. The defendant has failed to comply with the mandatory rules of procedure for briefing evidentiary claims pursuant to Practice Book § 4065, and we therefore have nothing to review. In his brief, the defendant states that on thirty-two occasions he was denied the opportunity to present evidence of his defense of justification and includes only one verbatim account of such a ruling as an example. The defendant did not cite to the specific page numbers in the transcript of the rulings he objects to, nor did he include these sections of the transcript in his appendix, as required by Practice Book § 4065. Absent references to the particular questions, offers of proof, and rulings that constitute the defendant's claim, we are unable to review it.

Our rules of practice are clear that "[e]vidence relevant to the error must be printed in narrative form with appropriate references to the transcript." *State* v. *Ramsundar,* 204 Conn. 4, 17, 526 A.2d 1311 (1987). "The bare assertion in a brief that the evidence was improperly excluded, coupled with transcript page references, will not suffice. . . . It is our strong policy that rulings claimed as evidentiary errors to be reviewed by this court be provided and printed in the briefs as required and outlined by the Practice Book." (Citation omitted.) *State* v. *Seller,* 12 Conn. App. 395, 402, 530 A.2d 1106 (1987); *Osborne* v. *Osborne,* 2 Conn. App. 635, 641, 482 A.2d 77 (1984). We have found that strict compliance with the Practice Book § 4065 does not cause surprise or injustice, "especially when the claim of error relates to a matter which lies largely in the discretion of the trial court." *Shenefield* v. *Greenwich Hospital Assn.,* 10 Conn. App. 239, 242–44, 522 A.2d 829 (1987).

The defendant's first three assignments of error challenge the trial court's instructions to the jury. His first claim is that the trial court erroneously limited its instruction on the defense of justification to General Statutes § 22-358.[4] The defendant argues that in addition to charging the jury that it could find the defendant's killing the dog justified under the circumstances set forth in General Statutes § 22-358, he was also entitled to a "general justification" instruction.

"When a defendant admits the commission of the crime charged but seeks to excuse or justify its commission so that legal responsibility for the act is avoided, a theory of defense charge is appropriate. A defendant must, however, assert a *recognized legal defense before such a charge will become obligatory.*" (Emphasis added.) *State* v. *Rosado,* 178 Conn. 704, 707, 425 A.2d 108 (1979). Our Supreme Court has held that only when the evidence presented indicates the availability of one of the numerous statutory defenses, codified in the General Statutes, is the defendant entitled, as a matter of law, to a theory of defense charge. Id., 708.

We are not aware of any *general* noncodified justification defense recognized under our law, and, therefore, we conclude that the defendant had no right to such an instruction.

With respect to the defense of justification provided in our penal code pursuant to General Statutes §§ 53a-16[5]

---

[4] General Statutes § 22-358 provides in pertinent part: "KILLING OF DOGS DOING DAMAGE. QUARANTINE OF BITING DOGS. NOTICE. (a) Any owner or the agent of any owner of any domestic animal or poultry, or the chief canine control officer or any canine control officer or any warden or regional canine control officer, may kill any dog which he observes pursuing or worrying any such domestic animal or poultry. . . .

"(d) Any person who kills any dog in accordance with the provisions of this section shall not be held criminally or civilly liable therefor."

[5] "[General Statutes] Sec. 53a-16. JUSTIFICATION AS DEFENSE. In any prosecution for an offense, justification, as defined in sections 53a-17 to 53a-23, inclusive, shall be a defense."

and 53a-19,[6] which the defendant referred to in his request to charge, we conclude that those statutes do not apply to the use of force against animals. These statutes represent a codification of the common law; see Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes, p. 219; and specifically refer to the use of force against "persons." "Person" is defined under General Statutes § 53a-3 (1) as "a *human being,* and, where appropriate, a public or private corporation, an unincorporated association, a partnership, a government or a governmental instrumentality." (Emphasis added.) Based on a plain language reading of these statutes, it is evident that General Statutes §§ 53a-16 and 53a-19 apply *only* to the use of force against another *person* and not animals. Therefore, the trial court properly limited its instruction of the defense of justification to the specific statutory defense for killing a dog set forth in General Statutes § 22-358.

The defendant's next claim is that the trial court's instruction to the jury on the defense of mistake of law was confusing and misled the jury. In particular, he objects to the court's charge defining what constitutes an official statement pursuant to General Statutes § 53a-6 (b).[7]

---

[6] Section 53a-19 provides in pertinent part: "(a) Except as provided in subsections (b) and (c) *a person* is justified in using reasonable physical force *upon another person* to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." (Emphasis added.)

[7] General Statutes § 53a-6 (b) provides in pertinent part: "A person shall not be relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief that it does not, as a matter of law, constitute an offense, unless (1) the law provides that the state of mind established by such mistaken belief constitutes a defense, or unless (2) such

There was testimony presented at trial that when the defendant's wife complained to Officer Jack Landon of the Glastonbury police department that the dog had entered her property and bothered her chickens, he told her about a personal incident in which he shot his rifle several times in the air in order to scare away dogs that went after his sheep. The defendant's wife testified that Landon had told her that this course of action would probably be the best way to handle her situation. She later related this discussion to the defendant.

On the basis of this testimony, the defendant requested an instruction on the defense of mistake of law. He asserts that the court should have instructed the jury, as he requested, that "a Glastonbury police officer is a public servant and if a statement was made in the course of his employment it is an official statement." The trial court did not give this particular instruction but instead gave a general charge on the defense of mistake of law in which it discussed the statute and set out the situations in which mistake of law would be a defense to a crime.[8] As to what was meant by "offi-

mistaken belief is founded upon an official statement of law contained in a statute or other enactment, an administrative order or grant of permission, a judicial decision of a state or federal court, or an interpretation of the statute or law relating to the offense, officially made or issued by a public servant, agency or body legally charged or empowered with the responsibility or privilege of administering, enforcing or interpreting such statute or law."

[8] The trial court gave the jury the following instruction as to the defense of mistake of law: "The second defense asserted by the defendant is a justifiable mistake of law. In that regard ordinarily a mistake of law, even if it is an honest mistake of law, is not a valid defense to a crime. . . .

"But we do have a special law in Connecticut, section [53a-6 (b)] of our general statutes which provides in part as follows. A person shall not be relieved—again they're using a double negative—a person shall not be relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief that it does not as a matter of law constitute an offense unless—another way that they might have said that is that you could be relieved of criminal liability if—and now is the important part and I'm going to skip one because it is not applicable—number two, such mis-

cial act," the court read to the jurors a dictionary definition of that term: "An act done by an officer in his official capacity under color and by virtue of his office." Ballantine's Law Dictionary. The court explained that they had heard testimony from both Landon and the

taken belief is founded upon an official statement of law contained in a statute or other enactment, an administrative order or grant of permission, a judicial decision of a state or federal court, and none of those really apply to this case. And now the one that seems to be in question here, or an interpretation of the statute or law relating to the offense officially made or issued by a public servant, agency or body legally charged and empowered with the responsibility or privilege of administering, enforcing or interpreting such statute or law.

"Now, you remember the testimony that relates to this. The officer told you his side of it on the one hand and Mrs. Fiocchi and Mr. Fiocchi told you their version on the other and it's up to you to decide in your fact finding capacity who to believe and who not to believe and what facts actually were true.

"Under this second defense as related to this case the defendant would be relieved of criminal responsibility for his conduct if the following elements are found.

"Number one, he acted under a mistaken belief that killing the dog did not as a matter of law constitute a criminal offense. Number two—and this is an and, not an or—the mistaken belief is founded upon the official statement of law. It has to be an official statement of law. And, number three, the official statement of law is contained in an interpretation of the statute of law relating to an offense officially made or issued by a public servant legally charged with enforcing the law.

"So you have three elements there to think about. He has to have been mistaken. The mistake has to have been founded on an official statement of law and the official statement of law has to have been made officially by a public servant whose job it is to enforce the law.

"Again, no definitions are specifically provided by the legislature and you should use the ordinary meaning of these words in applying the rule.

"The statute uses both the phrases official statement and officially made to describe the interpretation of the law. It will be your responsibility to determine as a matter of fact in this case from all the evidence whether such a statement was officially made.

"Ballantine's Law Dictionary, fourth edition, defines official act as, 'An act done by an officer in his official capacity under color and by virtue of his office.'

"Again, since the defendant has raised this defense of mistake of law the state has the burden of disproving the defense beyond a reasonable doubt. In other words you cannot find the defendant guilty of any of the three charges unless upon all the evidence you are satisfied beyond a rea-

defendant's wife and that it was for the jurors to decide whether the statement made by Landon was made officially.

"Jury instructions are calculated to give the jurors a clear understanding of the elements of the crime charged, and to afford them proper guidance for their determination of whether those elements were present. (Citation omitted.) As long as the charge achieves those goals it is constitutionally adequate." *State* v. *Sinclair,* 197 Conn. 574, 581, 500 A.2d 539 (1985). "Jury instructions, of course, need 'not be exhaustive, perfect or technically accurate,' so long as they are 'correct in law, adapted to the issues and sufficient for the guidance of the jury.' *Castaldo* v. *D'Eramo,* 140 Conn. 88, 94, 98 A.2d 664 (1953)." *State* v. *Kurvin,* 186 Conn. 555, 572, 442 A.2d 1327 (1982). The question for our determination is whether the charge, when considered as a whole, presented the case to the jury so that no injustice resulted. *State* v. *Gabriel,* 192 Conn. 405, 419, 473 A.2d 300 (1984). "A charge must be considered as to its probable effect on the jury in guiding them to the correct verdict in the case." Id.

We conclude that the trial court's instruction on the defense of mistake of law was adequate. The trial court properly refused to instruct the jury, as the defendant requested, that Landon's comment constituted an official statement made during the course of his employment. Under the circumstances of this case, the court was correct in finding that this question was one of fact for the jury to decide.

sonable doubt that he was not mistaken as to the law by an official statement contained in interpretation of the statute of law officially made by a public servant as most particularly set forth in the statute read to you previously."

After the jury retired to deliberate, it requested further clarification on what was meant by "official." The court then repeated its earlier charge.

The defendant's final claim with respect to the jury instructions is that the charge was unfairly weighted in favor of the state, confusing, and led to injustice. The defendant has not pointed to any particular portions of the charge as misleading, confusing or unfair. The only argument presented by the defendant in support of this claim is that the verdicts in this case were inconsistent. It is well settled that consistency in verdicts is not required. *State* v. *Dumlao,* 3 Conn. App. 607, 625, 491 A.2d 404 (1985). This claim is, therefore, without merit.

The defendant's fourth claim is that the trial court erred in refusing to suppress oral statements he made to Officer Roy Dudzik prior to his arrest which, he argues, were obtained in violation of *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).[9] The defendant asserts that his prearrest discussions with Dudzik amounted to a custodial interrogation because the atmosphere in which the discussions took place was coercive. This claim is without merit.

" 'Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda:* (1) the defendant must have been in custody and (2) the defendant must have been subjected to police interrogation. *Miranda* v. *Arizona,* supra, 444.' *State* v. *Brown,* 199 Conn. 47, 51, 505 A.2d 1225 (1986); *State* v. *Stankowski,* 184 Conn. 121, 136, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981). Custodial interrogation occurs when ' "questioning [is] initiated by law enforcement officers after a person has been taken into custody or other-

---

[9] The defendant makes a related claim that it was error for the trial court to deny his request for a second suppression hearing with respect to prearrest oral statements made to the animal control officer. We conclude that the trial court did not abuse its discretion in denying this motion on the grounds that it was untimely and that the issues had been adequately determined by its earlier ruling. Practice Book §§ 811, 824.

wise deprived of his freedom of action in any significant way." *Miranda* v. *Arizona,* supra . . . .' *State* v. *Brown,* supra. Although what constitutes police custody is not always self-evident, 'the *Miranda* court was concerned with interrogation that takes place in a police dominated environment containing "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda* v. *Arizona,* supra, 467 . . . .' *State* v. *Januszewski,* 182 Conn. 142, 158, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). The United States Supreme Court has held that 'the only relevant inquiry [into custody] is how a reasonable man in the suspect's position would have understood his situation.' *Berkemer* v. *McCarty,* 468 U.S. 420, 422, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984); *State* v. *Brown,* supra, 54. This court has stated that a ' "person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States* v. *Mendenhall,* 446 U.S. 544, 553–54, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); *State* v. *Acquin,* 187 Conn. 647, 655, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983); *State* v. *Ostroski,* 186 Conn. 287, 291–92, 440 A.2d 984, cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982); *State* v. *Derrico,* 181 Conn. 151, 159, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980).' *State* v. *Young,* 191 Conn. 636, 651–52, 469 A.2d 1189 (1983). . . . We must look at the totality of the circumstances of the questioning in order to determine whether a 'reasonable person' would have construed those circumstances as placing him in a custody situation." *State* v. *Hoeplinger,* 206 Conn. 278, 286–87, 537 A.2d 1010 (1988).

In determining whether a trial court erroneously denied a motion to suppress the oral statements of a defendant, we must scrupulously examine the record in order to ascertain whether its factual findings, made in reaching that conclusion, are supported by substantial evidence. *State* v. *Schifflett,* 199 Conn. 718, 723, 508 A.2d 748 (1986). We have reviewed the record in this case and conclude that the trial court's finding that the defendant was not in custody was supported by substantial evidence.

There was evidence presented during the suppression hearing that, after shooting the dog, the defendant reported the incident to the police. When Officers Dudzik and Charles Utz arrived at the defendant's home, they parked their police cruiser, with lights flashing, at the foot of the defendant's driveway. Before the officers reached the defendant's home, he came out of his house and met them in the driveway. The defendant told the officers that he had shot the dog. The defendant then accompanied the officers to the cornfield across from his house, and showed them the location of the dead dog. At Dudzik's request, the defendant produced the gun he had used to shoot the dog. The trial court found that the defendant was never told to remain in the area and was at all times, until his arrest, free to leave. The court concluded that the defendant made the statements voluntarily and that, under the circumstances presented here, no reasonable person would have felt that his attendance was compelled.

The defendant does not contest these facts but rather argues that he was compelled to remain in the vicinity, to answer questions and to do what he was told, by virtue of the nature of the coercive atmosphere created by the presence of the police. The only evidence of coercion, however, is the defendant's assertions that the police were not "amicable," and that he felt he had no choice but to be cooperative.

Although the defendant's impressions are relevant to the inquiry of whether the defendant was in custody, they are not, as the defendant asserts, the determining factor, and alone are not sufficient to establish a custody situation. Instead, we examine the totality of the circumstances to determine whether a reasonable person, under the same circumstances, would not have felt free to leave. *State* v. *Hoeplinger,* supra, 276.

The question of whether a person has been "seized" for purposes of determining whether he or she was in custody is a question of fact. *State* v. *Ostroski,* 186 Conn. 287, 292, 440 A.2d 984, cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1980). The trial court specifically found the defendant's testimony at the suppression hearing, to the effect that he felt intimidated, not credible. We will not reexamine the trial court's determination as to the credibility of witnesses. *State* v. *DeForge,* 194 Conn. 392, 398, 480 A.2d 547 (1984).

Furthermore, the situation presented in this case is not of the type that the *Miranda* court intended to deter. The mere fact that an officer dressed in uniform and arriving in a police cruiser questions a person is not enough to trigger *Miranda* warnings. " 'Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. . . . [P]olice officers are not required to administer *Miranda* warnings to everyone they question' "; *State* v. *Januszewski,* supra, 159, quoting *Oregon* v. *Mathiason,* 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977). " 'Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the per-

son is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.' " *State* v. *Brown,* 199 Conn. 47, 52–53, 505 A.2d 1225 (1986), quoting *Florida* v. *Royer,* 460 U.S. 491, 497, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). We conclude that there was substantial evidence to support the trial court's finding that the defendant was not in custody.

The defendant's final claim is that the trial court improperly excluded a business record. The following facts are relevant to this issue. On direct examination of Milo Pacquin, an animal control officer, the defendant attempted to introduce under the business records exception to the hearsay rule, an infraction report that the witness had prepared. The report contained information regarding an incident in which Pacquin had investigated a complaint made by the defendant that the dog was on his property. As a result of this incident, Pacquin issued an infraction against the dog's owner and prepared the report at issue. On direct examination, Pacquin testified to these events. The trial court ruled that the document was a business record but excluded it, nevertheless, on the grounds that the report was irrelevant and not the best evidence.[10]

Although we agree with the defendant that evidence of the dog's prior incursions onto his property was relevant to his defense of justification, pursuant to General Statutes § 22-358, we conclude that the exclusion of this evidence was harmless. Because other testimony of the events described in the infraction report was already in evidence and the document's author had already given a verbatim account of the report's contents, further evidence on this issue would have been cumulative. *State* v. *Day,* 12 Conn. App. 129, 135, 529

---

[10] The state does not contest the fact that the best evidence rule was not the proper ground for excluding the report. See C. Tait & J. LaPlante, Connecticut Evidence (1988) § 10.10.

A.2d 1333 (1987). Therefore, since the defendant has not sustained his burden of demonstrating the harmfulness of this error to his case, his conviction must stand. See *State* v. *Ruth,* 181 Conn. 187, 199–200, 435 A.2d 3 (1980).

There is no error.

In this opinion the other judges concurred.