[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO SUPPRESS
The defendant, Maurice Harper, moves the Court to suppress evidence recovered during a traffic stop of the defendant. The defendant alleges violations of the fourth and. fourteenth amendments of the United States constitution and the constitution of the State of Connecticut. The defendant claims that any search and seizure was illegal because the police lacked probable cause to search the automobile, the search was conducted without the defendant's consent, and the search was in violation of his rights under Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 I FACTS
The Court heard testimony at a hearing held on March 1, 2000. The parties filed. memorandums of law in support of their respective positions, and the court heard oral presentations on April 24, 2000. The facts presented at the hearing indicate as follows.
State Police Trooper Richard Covello was on duty on October 29, 1999, which involved routine patrol. While in his vehicle, he traveled on CT Page 5937 Route 262 where he observed another State Trooper involved in a motor vehicle stop. As he was walking toward the motor vehicle stop, he observed a blue Honda coming toward him with dark tinted windows and no display of a tint sticker that was also emitting loud music. Trooper Covello testified that he "flagged" the vehicle to pull over so he could investigate whether there was a tint sticker. The operator of the vehicle complied.
Trooper Covello testified that he then approached the blue Honda. The operator rolled down the window and Trooper Covello requested the operator's license and registration of the vehicle. Trooper Covello further testified that he observed the operator to be nervous, anxious, breathing deeply, eyes focused straight ahead and hands tightly on the steering wheel. Trooper Covello indicated that while observing these actions, he also observed a bulge in the operator's pants pocket. Upon seeing the bulge in the operator's pocket, Trooper Covello was concerned about the existence of a weapon. He asked the operator about the bulge in his pocket. The operator responded that it was money. Trooper Covello testified that he asked the operator if there were any drugs or weapons in the vehicle. The operator indicated "yes" and produced a Kleenex container that contained a substance which the trooper recognized as crack cocaine. The substance tested positive for cocaine in a field test.
Trooper Covello identified the defendant Maurice Harper as the operator of the blue Honda motor vehicle. The defendant was placed under arrest for possession of a narcotic substance. Prior to the arrest, the defendant was not presented with his constitutional rights pursuant toMiranda v. Arizona, supra, 384 U.S. 436.
 II LAW
The state contends that the defendant lacks standing to contest the search of the vehicle because there was no evidence that he was the registered owner of the vehicle.
The Court will initially address the state's claim that the defendant lacks standing.
"In order to challenge a. search or seizure on fourth amendment grounds, a defendant must show that he has a reasonable expectation of privacy in the place searched. See Rakas v. Illinois, 439 U.S. 128,99 S.Ct. 421,58 L.Ed.2d 387 (1978)." State v. Ortiz, 47 Conn. App. 333, 337,705 A.2d 554 (1997) cert. denied, 244 Conn. 902, 710 A.2d 175 (1998). "In order to meet this rule of standing . . . a two-part CT Page 5938 subjective/objective test must be satisfied: (1) whether the [person contesting the search] manifested a subjective expectation of privacy with respect to [the invaded premises]; and (2) whether that expectation [is] one that society would consider reasonable . . . this determination is made on a case-by-case basis . . . Whether a defendant's actual expectation of privacy . . . is one that society is prepared to recognize as reasonable involves a fact-specific inquiry into all the relevant circumstances. . . . State v. Joyce, 229 Conn. 10, 20,639 A.2d 1007 (1994) Furthermore, [t]he defendant bears the burden of establishing the facts necessary to demonstrate a basis for standing.State v. Callari, 194 Conn. 18, 23, 478 A.2d 592 (1984), cert. denied,469 U.S. 1210, 105 S.Ct. 1178, 84 L.Ed.2d 327 (1985)." State v. Boyd,57 Conn. App. 176, 184, ___ A.2d ___ (2000)
It is well established that "[a] passenger in a motor vehicle, who fails to demonstrate a possessory interest in the car itself. or in any of the seized evidence, has no reasonable expectation of privacy in the area of the vehicle searched, and thus, he is precluded from contesting the validity of the search. . . . State v. Burns, 23 Conn. App. 602,611-12, 583 A.2d 1296 (1990)." State v. Ortiz, supra, 47 Conn. App. 337-38. The defendant, however, was not a passenger, but was the driver of the vehicle. Therefore, it becomes a question of whether the operator of a motor vehicle, who is not the owner, has an expectation of privacy and is that expectation reasonable.
Although the Court recognizes that the defendant bears the burden of establishing standing, the issue of standing was not raised by the state until after the presentation of testimony was completed. The issue of standing need not be addressed as the motion to suppress is decided on other grounds. Therefore, the court will proceed under the assumption that the defendant has standing.
The defendant's first claim is that the police lacked probable cause to search the vehicle. Trooper Covello properly stopped the vehicle. "Certain seizures are reasonable under the fourth amendment even in the absence of probable cause if there is a reasonable and articulable suspicion that a person has committed or is about to commit a crime.Florida v. Rover, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229
(1983); Terry v. Ohio, [392 U.S. 1, 24. 88 S.Ct. 1868. 20 L.Ed.2d 889
(1968)]; State v. Lamme, 216 Conn. 172, 184, 579 A.2d 484 (1990); Statev. Anderson, 24 Conn. App. 438, 441, 589 A.2d 372, cert. denied,219 Conn. 903, 593 A.2d 130 (1991). . . . State v. Kyles, 221 Conn. 643,659-60, 607 A.2d 355 (1992)." (Internal quotation marks omitted.) Statev. Wilkins, 240 Conn. 489, 495, 692 A.2d 1233 (1997). In addition, "[u]nder both the federal and state constitutions, police may detain an individual for investigative purposes if there is a reasonable and CT Page 5939 articulable suspicion that the individual is engaged or about to engage in criminal activity." State v. Groomes, 232 Conn. 455, 467-68, 656 A.2d 646
(1995); State v. Rivera, 56 Conn. App. 182, 185, 742 A.2d 387 (1999), cert. denied, 252 Conn. 927, 746 A.2d 791 (2000). "Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. State v. Torres, 230 Conn. 372,379, 645 A.2d 529 (1994); State v. Januszewski, 182 Conn. 142, 148-49,438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159,69 L.Ed.2d 1005 (1981). The police officer's decision . . . must be based on more than a hunch or speculation. State v. Cofield, 220 Conn. 38, 45,595 A.2d 1349 (1991). In justifying the particular intrusion, [t]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that [intrusion]. Terry v. Ohio, 392 U.S. 1, 21,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). . . . Once a reasonable and articulable suspicion exists, the detaining officer may conduct an investigative `stop' of the suspect to confirm or dispel his suspicions. . . . State v. Kyles, 221 Conn. 643, 660, 607 A.2d 355 (1992)." (Internal quotation marks omitted.) State v. Daeria, 51 Conn. App. 149,154-55, 721 A.2d 539 (1998).
Trooper Covello was justified in stopping the defendant's vehicle for investigative purposes because he had a reasonable and articulable suspicion that the defendant's vehicle had illegally tinted windows. The defendant is seeking to suppress drugs that he handed to Trooper Covello after Trooper Covello asked the defendant if he had any weapons or narcotics on his possession. The drugs were not the subject of a search of the vehicle by Trooper Covello, thus the Trooper did not need to have probable cause to search the vehicle at the time that the defendant gave the drugs to Trooper Covello. Trooper Covello did not violate the defendant's constitutional rights by stopping the vehicle because he had a reasonable and articulable suspicion of criminal activity.
The defendant's second argument is that the search and seizure was illegal because it was conducted without the consent of the defendant. When the defendant moves for suppression of evidence that is obtained by consent, the burden is on the state to establish by a preponderance of the evidence that the defendant voluntarily consented to the search.State v. Cobb, 251 Conn. 285, 315, 743 A.2d 1 (1999); State v. Ortiz,17 Conn. App. 102, 103, 550 A.2d 22, cert. denied, 209 Conn. 828,552 A.2d 1216 (1988). The defendant contends that the consent to search was not voluntary. "A search . . . Is not unreasonable under . . . thefourth amendment to the constitution of the United States . . . if a person with authority to do so has fully consented. . . . Schneckloth v.CT Page 5940Bustamonte, 412 U.S. 218, 248, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)."State v. Cobb, supra, 251 Conn. 314.
Reviewing the facts presented at the hearing, the defendant turned over the Kleenex box containing a narcotic substance when requested by Trooper Covello. Trooper Covello testified that he never pointed a gun at the defendant, he didn't touch him, and he didn't give him any commands. There is no evidence that the request involved a protracted period of time. Nor is there any evidence that the Trooper employed a coercive or deceptive procedure to obtain the defendant's consent. "[T]he ultimate question is whether the will of the consenting individual was overborne, or whether the consent was his unconstrained choice. State v. Cobbs, 7 Conn. App. 656, 659, 510 A.2d 213 (1986);State v. MacNeil, 28 Conn. App. 508, 514, 613 A.2d 296, cert. denied,224 Conn. 901, 615 A.2d 1044 (1992)." (Internal quotation marks omitted.) State v. Story, 53 Conn. App. 733, 740-41, 732 A.2d 785, cert. denied, 251 Conn. 901, 738 A.2d 1093 (1999). The voluntariness of the consent is determined by the totality of circumstances, evidence presented and the reasonable inferences that can be drawn therefrom.State v. Ortiz, supra, 17 Conn. App. 103. The Court finds that based upon the totality of the circumstances, the consent was voluntary because the defendant voluntarily turned the drugs over to the police in response to the request of Trooper Covello, and there is no evidence that the consent was obtained by overbearing on the defendant's will.
The defendant's final argument is that the search and seizure was in violation of the Miranda requirements. "Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required byMiranda: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation. Miranda v.Arizona, supra, [384 U.S. 444]." State v. Brown, 199 Conn. 47, 51,505 A.2d 1225 (1986); State v. Copeland, 205 Conn. 201, 206, 530 A.2d 603
(1987). "A person is in custody only if, in view of all the surrounding circumstances, a reasonable person would have believed he was not free to leave. United States v. Mendenhall, 446 U.S. 544, 553-54,100 S.Ct. 1870, 64 L.Ed.2d 497, reh. denied, 448 U.S. 908, 100 S.Ct. 3051,65 L.Ed.2d 1138
(1980); State v. Hoeplinger, 206 Conn. 278, 287, 537 A.2d 1010
(1988). As stated by the United States Supreme Court in California v.Beheler, [463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983)], [a]lthough the circumstances of each case must certainly influence a determination of whether a suspect is `in custody' for purposes of receiving Miranda protection, the ultimate inquiry is simply whether there is a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest. . . . State v. Pittman,209 Conn. 596, 608, 553 A.2d 155 (1989)." (Citations omitted; internal quotation marks omitted.) State v. Pinder, 250 Conn. 385, 409, 736 A.2d 857
CT Page 5941 (1999). "Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.Miranda v. Arizona, supra; see State v. Januszewski, 182 Conn. 142, 158,438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159,69 L.Ed. 1005 (1981)." State v. Brown, supra, 199 Conn. 52.
The defendant bears the initial burden of proving custodial interrogation. State v. Pittman, supra, 209 Conn. 606. "[W]hat constitutes police custody for purposes of the Miranda warnings is not always self-evident. One thing is clear: the Miranda court was concerned with interrogation that takes place in a police dominated environment containing inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. Miranda v. Arizona, supra [384 U.S. 467].State v. Januszewski, supra. In other words, police officers are not required to administer Miranda warnings to everyone whom they question.State v. Januszewski, supra, 159." (Internal quotation marks omitted.)State v. Brown, supra, 199 Conn. 52.
The United States Supreme Court has addressed the issue of "whether the roadside questioning of a motorist detained pursuant to a routine traffic stop should be considered `custodial interrogation' in Berkemerv. McCarty, 468 U.S. 420, 435, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). The Court in Berkemer `acknowledged at the outset that a traffic stop significantly curtails the `freedom of action' of the driver and the passengers, if any, of the detained vehicle. Under the law of most States, it is a crime either to ignore a. policeman's signal to stop one's car or, once having stopped, to drive away without permission. . . Certainly few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so. . . . Partly for these reasons, we have long acknowledged that stopping an automobile and detaining its occupants constitute a `seizure' within the meaning of [the Fourth] Amendmen[t], even though the purpose of the stop is limited and the resulting detention quite brief. Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct.59 L.Ed.2d 660 (1979) . . .
"Fidelity to the doctrine announced in Miranda requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated. Thus, [the Court should] decide whether a traffic stop exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights. CT Page 5942
"Two features of an ordinary traffic stop mitigate the danger that a person questioned will be induced `to speak where he would not otherwise do so freely, Miranda v. Arizona, [supra], 384 U.S. 467. First, detention of a motorist pursuant to a traffic stop is presumptively temporary and brief. The vast majority of roadside detentions last only a few minutes. A motorist's expectations, when he sees a policeman's light flashing behind him, are that he will be obliged to spend a short period of time answering questions and waiting while the officer checks his license and registration, that he may then be given a citation, but that in the end he most likely will be allowed to continue on his way. In this respect, questioning incident to an ordinary traffic stop is quite different from stationhouse interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek. . . .
"Second, circumstances associated with the typical traffic stop are not such that the motorist feels completely at the mercy of the police. To be sure, the aura. of authority surrounding an armed, uniformed officer and the knowledge that the officer has some discretion in deciding whether to issue a citation, in combination, exert some pressure on the detainee to respond to questions. But other aspects of the situation substantially offset these forces. Perhaps most importantly, the typical traffic stop is public, at least to some degree. Passersby, on foot or in other cars, witness the interaction of officer and motorist. This exposure to public view both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse. The fact that the detained motorist typically is confronted by only one or at most two policemen further mutes his sense of vulnerability. In short, the atmosphere surrounding an ordinary traffic stop is substantially less `police dominated' than that surrounding the kinds of interrogation at issue in Miranda itself.
"In both of these respects, the usual traffic stop is more analogous to a so-called `Terry stop,' see Terry v. Ohio, [supra] 392 U.S. 1, than to a formal arrest. Under the Fourth Amendment, [the United States Supreme Court has] held, a policeman who lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion. United States v. Brignoni-Ponce, 422 U.S. 873, 881,95 S.Ct. 2574,45 L.Ed.2d 607 (1975). [T]he stop and inquiry must be reasonably related in scope to the justification for their initiation. Id. Typically, this means that the officer may ask the detainee a moderate CT Page 5943 number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions . . . But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not `in custody' for the purposes of Miranda." (Citations omitted; internal quotation marks omitted.) Berkemer v. McCarty, supra, 468 U.S. 436-40. See also State v. Gregory, 56 Conn. App. 47, 54, 741 A.2d 896 (1999), cert. denied, 252 Conn. 929, 746 A.2d 790 (2000).
In addition to the objective standard of determining that custody does not automatically occur as a result of an investigatory detention as explained in Berkemer, the Court will also apply the two pronged subjective rule stated in State v. Pinder, supra, 250 Conn. 409: (1) what are the circumstances surrounding the encounter, and (2) given those circumstances would a reasonable person have felt that he or she was not free to terminate the encounter and leave.
In applying the subjective standard from Pinder, the Court considers the facts presented at the hearing that the questioning of Trooper Covello was brief, Trooper Covello's approach was not coercive, and the defendant's response was quick in producing the box with the cocaine. This inquiry came during the time of the motor vehicle violation stop by Trooper Covello. It was reasonable to conclude that the defendant would be able to terminate the encounter and leave. The Court finds that the defendant has not sustained his burden of proving custody under a subjective standard.
Under the objective standard in Berkemer, the Court finds that the initial stop of the defendant's vehicle did not render him "sin custody" for the purposes of Miranda. Although the Trooper initially stopped the defendant for a motor vehicle violation, the Trooper's reasonable suspicion that the defendant may be involved in drug activity was triggered by the defendant's behavior. The Trooper noticed a large bulge in the pant pocket of the defendant, which the defendant stated was money, and the defendant appeared nervous in response to the Trooper's questions for his license and registration. The Trooper had sufficient information to supply a reasonable suspicion to believe that the defendant may have been conducting illegal sale of narcotics. The Trooper asked the defendant a moderate number of questions to try to dispel his suspicions concerning drug activity. The court determines, therefore, that the Trooper's question to the defendant as to whether he CT Page 5944 had any weapons or narcotics was not beyond the scope of the investigatory detention.
Additionally, the defendant was not formally arrested. The stop was made in public, and there is no indication that the investigatory stop was anything more than temporary until the defendant handed the Trooper the drugs. Thus the defendant's freedom of action was not curtailed to a degree associated with formal arrest during the investigative stop, seeBerkemer v. McCarty, supra, 468 U.S. 440, and the questioning of the defendant was not conducted in violation of Miranda because the defendant was not in custody.
In conclusion, the defendants federal and state constitutional rights have not been violated for the foregoing reasons.
The defendant's motion to suppress is therefore denied.
D'ADDABBO, J.