### STATE OF CONNECTICUT *v.* JOHN PITTMAN
### (13197)

HEALEY, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued November 10, 1988—decision released January 17, 1989

*Jeffrey R. Van Kirk,* for the appellant (defendant).

*Mary H. Lesser,* deputy assistant state's attorney, with whom, on the brief, was *Lawrence Daly,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, John Pittman, was charged in an information with the crime of murder in violation of General Statutes § 53a-54a (a).[1] The charge arose out of the homicide of the defendant's

---

[1] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant

wife, Gloria Pittman, who was stabbed to death in her automobile on October 13, 1985, in Hartford. Her skeleton was later discovered in the Mill River in New Haven on April 5, 1986. The defendant pled not guilty to the charge and was tried and convicted by a jury. The trial court subsequently sentenced the defendant to a term of imprisonment of sixty years.

The defendant, on appeal, has raised three claims of error. He claims that the trial court erred in: (1) denying his motion to suppress tangible evidence; (2) limiting his cross-examination of two of the state's witnesses; and (3) permitting the state to elicit testimony of his postarrest silence. We find no reversible error.

I

The defendant first claims that the trial court erred in denying his motion to suppress certain tangible evidence that was seized from the victim's 1979 Chrysler LeBaron automobile. The facts relative to the defendant's claim have their genesis on the morning of October 15, 1985, two days after the victim's disappearance. At that time, the defendant was confronted at his residence at 240 Martin Street, Hartford, by two of his wife's sisters and her brother and questioned concerning the victim's whereabouts. The victim's siblings were unable to obtain either information or an expression of concern from the defendant. As a result, the victim's sister, Stella, called the Hartford police and reported Gloria missing.

---

believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

Officer Elwood Horsey was dispatched to the defendant's residence to investigate. When he arrived, he found a hostile situation involving the defendant and his in-laws. The hostility was apparently generated because the members of the victim's family felt something was sinister about their sister's disappearance. Horsey also thought something was wrong because the defendant seemed unconcerned about his missing wife. After an initial discussion in the defendant's kitchen, the officer and the parties went outside to look at the victim's car. During the inspection of the car, the defendant was cooperative and opened the doors and the trunk to facilitate the policemen's check of the vehicle. During the course of his examination, Horsey did not observe anything out of the ordinary.

Thereafter, apparently intending to take the car to her home, the victim's sister Louise demanded the keys to the vehicle from the defendant. In response the defendant turned the keys over to Horsey. When he did so, he informed the officer that they were the only set he had in his possession.[2] Horsey, in turn, handed the keys over to Louise, who kept them until the time of trial.

On the evening of October 15, the police were again called to the defendant's residence. This time the call emanated from the defendant with a complaint that his in-laws were trespassing. Upon their arrival, the patrol officers, who were dispatched to handle the defendant's complaint, found the defendant and members of his wife's family engaged in an altercation and called Sergeant Frank Campbell for assistance. When Campbell arrived, he spoke to the patrol officers, the defendant and the victim's relatives. As a result of those conver-

---

[2] Later that same day, however, Horsey drove by the defendant's residence and the car was missing from its earlier parking place. One of the victim's daughters later told Horsey that there was another set of keys.

sations, Campbell thought further investigation was necessary and summoned Detectives Stephen Kumnick and Luis Vera. When the detectives responded, they learned that the victim was last seen in the Chrysler LeBaron with the defendant and that the victim was the owner of the automobile.

After obtaining that information, Kumnick, Vera and Campbell went to look at the victim's car. The vehicle at the time was locked and parked on neighboring property at 234 Martin Street, where it was clearly visible from the road. While viewing the car, the police observed a substance on the windshield that Kumnick and Campbell thought was a piece of flesh. The officers then secured the car and requested that a tow truck be called. The car was later removed to a local garage. On October 17, 1985, a search warrant was issued for the victim's car and on October 18, 1985, that warrant was executed and the vehicle searched. During the course of the search, samples of the upholstery and other items were taken. The items taken yielded evidence damaging to the defendant that was later admitted at his trial.[3]

The state claimed that the defendant did not have an expectation of privacy in the victim's car that would support a challenge to its seizure and subsequent search. The defendant claimed an expectation of privacy in the vehicle but admitted that it was registered in his wife's name and that he had not provided any of the funds for its purchase. He maintained, however, that he had operated the car frequently, going back and forth to work, and for shopping. The defendant did not possess a valid motor vehicle operator's license.

The trial court found that the defendant had no reasonable expectation of privacy in the victim's automo-

[3] A subsequent search warrant was issued on November 29, 1985, which resulted in the seizure of more tangible evidence. The defendant's claim is the same as to the evidence seized by virtue of both warrants.

bile and therefore that he had no "standing" to object to its seizure or to the admission of the evidence obtained when it was searched. See *Rawlings* v. *Kentucky,* 448 U.S. 98, 104–105, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980); *Rakas* v. *Illinois,* 439 U.S. 128, 134, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978), reh. denied, 439 U.S. 1122, 99 S. Ct. 1035, 59 L. Ed. 2d 83 (1979); *State* v. *Santiago,* 8 Conn. App. 290, 296, 513 A.2d 710 (1986). That finding will not be overturned unless it is legally or logically inconsistent with the facts found or involves an erroneous rule of law. *State* v. *Brown,* 198 Conn. 348, 354–55, 503 A.2d 566 (1986); *State* v. *Zindros,* 189 Conn. 228, 242, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984). Further, the burden is on the defendant to prove that he had a reasonable expectation of privacy in the victim's automobile. *Rawlings* v. *Kentucky,* supra; *Rakas* v. *Illinois,* supra, 130 n.1; *State* v. *Brown,* supra, 356; *State* v. *Harris,* 10 Conn. App. 217, 223, 522 A.2d 323 (1987). In order to sustain that burden, the defendant must prove, first, that he had an actual subjective expectation of privacy in his wife's car and, second, that his expectation was one that society would recognize as reasonable. *New Jersey* v. *T.L.O.,* 469 U.S. 325, 338, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985); *Katz* v. *United States,* 389 U.S. 347, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (Harlan, J., concurring); *State* v. *Reddick,* 207 Conn. 323, 331, 541 A.2d 1209 (1988); *State* v. *Brown,* supra; *State* v. *Zindros,* supra, 239.

Whether the defendant has established that he possessed a reasonable expectation of privacy in the automobile requires a factual inquiry into all the relevant circumstances surrounding its seizure. *Oliver* v. *United States,* 466 U.S. 170, 177–78, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984); *United States* v. *Brown,* 635 F.2d 1207, 1211 (6th Cir. 1980); *State* v. *Reddick,* supra, 331; *State* v. *Brown,* supra. Such an inquiry reveals that

when the victim's automobile was seized, it was parked in plain view from the street on premises other than the defendant's, that it was not registered in the defendant's name, nor did he purchase it, that he had no operator's license, and that he had earlier assisted Officer Horsey in his examination of the vehicle without asserting a privacy right. More important, however, is the evidence that the defendant, in response to his sister-in-law's demand, surrendered what he professed to be the only set of keys to the automobile to Horsey to give to the victim's sister. Given the fact that there is a diminished expectation of privacy in an automobile to begin with; *United States* v. *Chadwick,* 433 U.S. 1, 12, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977); *Cardwell* v. *Lewis,* 417 U.S. 583, 590, 94 S. Ct. 2464, 41 L. Ed. 2d 325 (1974); *State* v. *Morrill,* 197 Conn. 507, 541–42, 498 A.2d 76 (1985); it is difficult to fathom how the defendant can claim any reasonable expectation of privacy in the victim's car after having given, without any apparent limitation, the means of assuming possession and control of it to his hostile sister-in-law.

Under all of the circumstances, we think that the trial court properly concluded that the defendant failed to sustain his burden of demonstrating a reasonable expectation of privacy, the necessary predicate to his claim of a violation of his fourth amendment rights.

## II

The defendant next claims that the trial court erred when it limited his cross-examination of two of the state's witnesses. He argues that because of the limitation imposed on his cross-examination, he was deprived of his sixth amendment right to confrontation.

During the course of the trial the state announced its intention to call as witnesses Gregory Blue and Mitchell Henderson. Both Blue and Henderson had criminal records and both had cases pending against

them at the time of the defendant's trial. Before either witness testified, the trial court ruled that the defendant could cross-examine them concerning only prior felony convictions and pending felony cases because, in the court's view, the law did not permit cross-examination concerning pending misdemeanor charges.

Subsequently, Blue gave damaging testimony against the defendant. On direct examination, the state elicited from Blue that he previously had been convicted of forgery, escape and larceny in the second degree. Blue also testified on direct examination that he had felony charges of risk of injury to a child and of being a persistent larceny offender pending against him. Further, he admitted that he had talked to the authorities and come forward and testified against the defendant only because he was on trial in Manchester and he was looking for some help in his own case. The defendant cross-examined Blue concerning his felony convictions, his pending felony charges and his motivation for testifying. Because of the trial court's ruling, however, the defendant was prevented from questioning Blue about a pending misdemeanor larceny charge.

The trial court erred in limiting the defendant's cross-examination of Blue concerning pending charges to pending felony charges. *United States* v. *Vasilios,* 598 F.2d 387, 389–90 (5th Cir. 1979), cert. denied sub nom. *Alexander* v. *United States,* 444 U.S. 932, 100 S. Ct. 277, 62 L. Ed. 2d 190 (1979); *State* v. *Ortiz,* 198 Conn. 220, 223–24, 502 A.2d 400 (1985). The defendant on cross-examination, however, took full advantage of the opportunity afforded him "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *United States* v. *Vasilios,* supra, 389; *State* v. *Milner,* 206 Conn. 512, 525, 539 A.2d 80 (1988); *State* v. *Lubesky,*

195 Conn. 475, 483, 488 A.2d 1239 (1985). The constitutional standard was, therefore, met. *State* v. *Jones,* 205 Conn. 638, 669–72, 534 A.2d 1199 (1987); *State* v. *Vitale,* 197 Conn. 396, 402, 497 A.2d 956 (1985); *State* v. *Castro,* 196 Conn. 421, 425, 493 A.2d 223 (1985). Because the trial court's error was not of constitutional dimension, the burden is on the defendant to prove that it was probably harmful. *State* v. *Vitale,* supra, 403; *State* v. *Briggs,* 179 Conn. 328, 333, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980); *State* v. *Jones,* 167 Conn. 228, 233, 355 A.2d 95 (1974). Given the latitude that the defendant was granted on cross-examination and in final argument to emphasize Blue's prior record, his pending felony charges, and his motivation for testifying, it is manifest that the defendant's inability to inquire about a single misdemeanor charge was harmless. See *State* v. *Vitale,* supra, 404; *State* v. *George,* 194 Conn. 361, 365–66, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985). The defendant, therefore, did not sustain his burden of demonstrating that the ruling was probably harmful.

Henderson also provided damaging testimony against the defendant. As to Henderson, however, the record is devoid of any evidence that there were misdemeanor charges pending against him at the time of the defendant's trial. We are, therefore, unable to determine whether the trial court committed any error at all, let alone constitutional error, in restricting the defendant's cross-examination of Henderson to an inquiry concerning pending felony charges. Because the defendant has failed to provide an adequate record for review, we are unable to consider his claim of error as it applies to Henderson.[4] Practice Book § 4061; *State* v. *Tyler-*

---

[4] It does appear, however, that Henderson's prior record, pending felony charge and motivation for testifying were exposed on direct examination,

*Barcomb,* 197 Conn. 666, 676, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986); *State* v. *Thompson,* 197 Conn. 67, 81, 495 A.2d 1054 (1985).

## III

Finally, the defendant claims that the trial court erred by permitting the state to elicit testimony concerning the defendant's silence and "no comment" response when faced with custodial interrogation.

During the defendant's trial, over his objection, the trial court admitted the testimony of Kumnick concerning the defendant's lack of responsiveness to police questioning. The state at trial claimed that the evidence was an admission relevant to consciousness of guilt. See *State* v. *Leecan,* 198 Conn. 517, 522, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). The defendant claimed that the evidence was inadmissible because it was obtained in violation of his constitutional rights. The defendant's constitutional argument is based on his contention that his silence or "no comment" response to police questioning was the result of police interrogation while he was in custody prior to receipt of *Miranda* warnings. *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Any evidence obtained as a result of interrogation from a person in custody who has not been provided *Miranda* warnings is inadmissible in the state's case-in-chief. Id., 479; see also *Berkemer* v. *McCarty,* 468 U.S. 420, 429, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984); *Harryman* v. *Estelle,* 616 F.2d 870, 874 (5th Cir.), cert. denied, 499 U.S. 860, 101 S. Ct. 161, 66 L. Ed. 2d 76 (1980); *State* v. *Ferrone,* 97 Conn. 258, 266, 116 A. 336 (1922). The defendant's claim, therefore,

---

cross-examination and in final argument. Even if Henderson did have a pending misdemeanor charge, it is difficult to imagine that the trial court's ruling would have been harmful. See discussion re Blue, supra.

has validity if he was, in fact, subjected to custodial interrogation. *State* v. *Stankowski,* 184 Conn. 121, 136–38, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981). The trial court found that, although the police interrogated the defendant prior to the administration of *Miranda* warnings,[5] the defendant was not in custody. It ruled consequently that *Miranda* warnings were not mandated and that the defendant's response to police questions was admissible. *State* v. *Walker,* 206 Conn. 300, 306, 537 A.2d 1021 (1988); *State* v. *Leecan,* supra, 521–23.

The defendant had the initial burden of proving custodial interrogation. *United States* v. *Charles,* 738 F.2d 686, 692 (5th Cir. 1984); *State* v. *Doehrer,* 200 Conn. 642, 647, 513 A.2d 58 (1986); *State* v. *Vitale,* supra, 409. The trial court's determination that the defendant was not in custody is a finding of fact. *State* v. *Ostroski,* 186 Conn. 287, 292, 440 A.2d 984, cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982). That finding of fact by the trial court will not be overturned unless it is clearly erroneous. Id.; see Practice Book § 4061; *State* v. *Young,* 191 Conn. 636, 652, 469 A.2d 1189 (1983). We will, however, carefully review the record to ascertain whether the trial court's finding is supported by substantial evidence. *State* v. *Toste,* 198 Conn. 573, 580, 504 A.2d 1036 (1986); *State* v. *Alexander,* 197 Conn. 180, 185, 496 A.2d 486 (1985).

The record reveals that the following facts were before the trial court. On the evening of October 15, 1985, the defendant was transported to Hartford police headquarters in a police vehicle. This occurred after the police had responded to the defendant's complaint and had found the defendant and his in-laws engaged in an altercation in the defendant's driveway. Although

---

[5] The state does not dispute that Kumnick's questioning constituted interrogation.

the defendant was a suspect in his wife's disappearance, the ostensible reason for the trip to police headquarters was to discuss the dispute at his home. When he arrived at police headquarters at approximately 9:30 p.m., the defendant was placed in an unlocked interview room. He was left alone and apparently unguarded in the interview room until approximately 11 p.m. During that time the defendant was not arrested or handcuffed nor has he claimed that he was booked, fingerprinted or photographed. Sometime around 11 p.m. Kumnick, having just returned from the defendant's premises at 240 Martin Street, entered the interview room and asked the defendant questions relating to his wife's possible whereabouts and what he thought may have happened to her. The defendant either made no response to Kumnick's questions or answered "no comment." After approximately five minutes, the defendant asked for a lawyer, Kumnick read him his *Miranda* rights, all questioning ceased, and the defendant called an attorney. Later, around midnight, the defendant left police headquarters with his attorney and was not arrested until March, 1986, some five months later. The record also indicates that the defendant had had previous experience with the criminal justice system; see *State* v. *Green,* 207 Conn. 1, 7, 540 A.2d 659 (1988); and that Kumnick testified that the defendant was free to leave police headquarters at any time.

There is no doubt that Kumnick asked questions of the defendant prior to advising him of his *Miranda* rights. Police officers, however, are not required to administer *Miranda* warnings every time they ask questions at police headquarters even if the person interrogated is a suspect in a crime. *California* v. *Beheler,* 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983); *Oregon* v. *Mathiason,* 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977); *State* v. *Januszewski,* 182 Conn. 142, 159, 438 A.2d 679 (1980), cert. denied,

453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). *Miranda* warnings are mandated only if the person interrogated is in custody. *Oregon* v. *Mathiason,* supra; *State* v. *Copeland,* 205 Conn. 201, 206, 530 A.2d 603 (1987); *State* v. *Wilson,* 199 Conn. 417, 444, 513 A.2d 620 (1986); *State* v. *Januszewski,* supra. A person is in custody only if, in view of all the surrounding circumstances, a reasonable person would have believed he was not free to leave. *United States* v. *Mendenhall,* 446 U.S. 544, 553–54, 100 S. Ct. 1870, 64 L. Ed. 2d 497, reh. denied, 448 U.S. 908, 100 S. Ct. 3051, 65 L. Ed. 2d 1138 (1980); *State* v. *Hoeplinger,* 206 Conn. 278, 287, 537 A.2d 1010 (1988). As stated by the United States Supreme Court in *California* v. *Beheler,* supra, 1125, "[a]lthough the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving *Miranda* protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest. *Mathiason,* supra, at 495." See also *New York* v. *Quarles,* 467 U.S. 649, 655, 104 S. Ct. 2626, 81 L. Ed. 2d 550 (1984); *Minnesota* v. *Murphy,* 465 U.S. 420, 430–31, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984); *United States* v. *Cadmus,* 614 F. Sup. 367, 370 (S.D.N.Y. 1985).

The only testimony concerning indicia of custody apparently credited by the trial court was that the defendant was transported to headquarters in a police vehicle and that the questioning took place in an interview room after the defendant had been at headquarters for a substantial period of time. See *State* v. *McCarthy,* 197 Conn. 247, 258, 496 A.2d 513 (1985). The trial court found that these circumstances did not add up to custody. We cannot say from our review of the record that the trial court's determination was clearly erroneous. See *State* v. *Young,* supra, 652.

Moreover, after reading the transcript we are constrained to observe that even if the trial court erred

in regard to custody, it was harmless beyond a reasonable doubt. *Chapman* v. *California,* 386 U.S. 18, 22-24, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967); *Harryman* v. *Estelle,* supra, 875; *Null* v. *Wainwright,* 508 F.2d 340, 343 (5th Cir.), cert. denied, 421 U.S. 970, 95 S. Ct. 1964, 44 L. Ed. 2d 459 (1975). The evidence against the defendant, including other displays of consciousness of guilt, was so overwhelming that the admission of his reaction to Kumnick's few questions pales by comparison. See *State* v. *Briggs,* supra, 336.

There is no reversible error.

In this opinion the other justices concurred.