[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner seeks a new trial on grounds of ineffective assistance of counsel.
By amended petition on file the petitioner (Pittman) alleges that Attorney Jeffrey Van Kirk's performance in the underlying criminal case 209 Conn. 596, 553 A.2d 155 (1989) fell below the ordinary skill expected from attorneys practicing criminal law, which resulted in his conviction in violation of his right to effective assistance of counsel as guaranteed by the U.S. and Connecticut Constitutions.
The petitioner alleges specifically Van Kirk
a. failed to effectively establish a defense for the Petitioner's criminal case in that he failed to present a theory of misidentification;
b. failed to call several material witnesses to testify at trial, including Phil Watts of Hartford Hospital;
c. failed to prevent prejudicial evidence from being introduced at trial;
d. failed to perform a diligent pre-trial investigation on behalf of the Petitioner;
e. failed to make a pre-trial motion requesting a substitute charge of manslaughter; CT Page 11370
f. failed to properly cross examine witness Henderson and witness Blue.
Petitioner asserts but for Van Kirk's performance it is reasonable the results would have been different.
(a) he would not have been convicted of murder;
(b) he would have not received the total effective sentence of sixty years.
Petitioner's post trial brief only focuses upon two claims: first, that he petitioner's blood type was "O" while the victim's blood type was "B", and that at trial the investigators found Type B and some Type A and AB blood in the victim's car, the alleged site of the crime.
The other claim as testified at this Habeas trial that Van Kirk had spoken with him about using a mannequin demonstration before the jury which the petitioner wanted done, but that Van Kirk failed to put on such a performance.
Respondent's Post-Trial Brief dated June 21, 1999 asserts "that our Supreme Court in reviewing petitioners conviction characterized the evidence against the petitioner as overwhelming" Pittman, 209 Conn at 609. At trial petitioner placed in evidence the transcript Exhibit 1-A-1-R. The Respondent summarized the pertinent testimony (Post Trial Brief of Respondent) as follows:
 "At the 1987 criminal trial, the state present evidence that, shortly after 9:00 a.m. on the morning of October 13, 1985, the petitioner and his wife Gloria Pittman,[1] left their residence in Gloria's car, a 1978 or 1979, green Chrysler LeBaron, for the purpose of transporting the petitioner to work. T. (3/25/87) at 25, 38-39, 141[2] Prior to leaving, the petitioner returned to the house to get his butcher knives. Id. at 24. Gloria was expected back in a half hour to take her children to the laundromat. Id. at 25-27. She never returned. Id. at 40-41. At approximately 9:20 to 9:30 a.m., Gloria was seen in the front passenger seat of her car as the petitioner drove it on Holcomb Street, Hartford. T. (3/26/87) at 211-12, 216. Although scheduled to begin work at John Brown's Restaurant in Bloomfield at 9:00 a.m., the petitioner never arrived. Id. at 200-02. Around 2:30 p. m., he telephone Michael Davis, a chef at the CT Page 11371 restaurant. He told Davis that his wife had a flat tire in Canton. T. (3/26/87) at 202.
 Later that afternoon, the petitioner came home, rushed to change his clothes, and took Gloria's children to the laundromat. T. (3/26/87) at 96-104. This was the first time in the children's memories that petitioner took them to the laundromat, as their mother generally did the wash. Id. at 38-39. Outside the laundromat the petitioner washed the inside of the car with bleach. Id. at 67-71, 131-32. The youngest child noticed that when petitioner wrung out the rags that he was using, the water was red and brown. Id. at 132. The older son thought it was odd that the petitioner was washing the car because it was raining, and the car had just been washed. Id. at 106.
 The next morning, Monday, October 14, 1985, the petitioner arrived at the Oak Hill School where he worked four days a week. T. (3/30/87) AT 482, 487. Gloria was also employed at the Oak Hill School. Id. at 480-81. Although she was scheduled to work from 7:00 a.m. to 3:00 p. m., Gloria didn't arrive. Id. at 483-86. Around 10:30 a.m., the petitioner approached Shannon Rhodes, the personnel director, and stated that he needed emergency leave. Id. at 487. He explained that Gloria was missing and that he needed to go home and take care of her children. Id. at 487. He was granted leave. Id. at 491. That evening, however, he worked his regular shift at Deacon's Loft Restaurant in Bloomfield. T. (3/31/87).
 The following day, October 15, 1985, after an altercation with Gloria's family, the petitioner was transported to the Hartford police station. Thereafter, he was asked several "questions relating to his wife's possible whereabouts and what he thought may have happened to her." Pittman, 209 Conn. at 607. He either made no response to these questions or answered "no comment." Id.; T. (3/30/87) at 466-67. Also on October 15, 1985, Gloria's car was towed at the request of the police. T. (3/26/87) at 289. Pursuant to a search warrant, the car was searched. T. (3/30/87) at 521-22. Dr. Henry Lee testified that he found human blood in the front passenger area of the car. T. (3/31/87) at 631-33. Much of the blood was type B, Gloria's blood type. Id. at 639-640. Other blood was found on the vehicle's front seat that came from a person with type A blood or type AB blood. The petitioner introduced evidence that his blood type O. T. (4.21.87) at 1146. Dr. Lee CT Page 11372 reconstructed the crime in the following way: the victim was struck with medium force and was bleeding in the front seat. The victim was then taken out of her car and put in the trunk. Thereafter, the car was cleaned. T. (3/31/87) at 645.
 On October 23, 1985, the petitioner called Shannon Rhodes at the Oak Hill School and asked if he or his sister could pick-up his paycheck and Gloria's paycheck. T. (3/30/87) at 514. Rhodes refused to provide him with Gloria's check. Id. Later, Rhodes asked the petitioner if he would cover Gloria's children on his plan so that they could continue to receive benefits. Id. at 515. The petitioner refused. Id. On November 12, 1987, the petitioner telephoned two different branches of Gloria's credit union about withdrawing money from her account[3] T. (3/31/87) at 601-04, 607-13. On one occasion, after he was told that the bank required Gloria's approval, the petitioner turned the phone over to a woman who represented that she was Gloria Pittman. T. (3/31/87) at 601-04. On the other occasion, he stated that "he would come right down with a note from her to get money out of her account." T. (3/31/87) at 609-10. Credit union personnel called the police who waited outside the Hartford office. T. (4/1/87) at 758-61. The petitioner arrive, spotted the police, and fled. T. (4/1/87) at 758-767.
 Gloria's skeleton was discovered in the Mill River in New Haven, on April 5, 1986. T. (4/6/87) at 915-18. It was identified by dental records as well as the clothing which was still clinging to the bones and a handbag that was found in the area of the remains. T. (4/6/87) at 937, 939; T. (4/7/87) at 939-40. The clothing and red shoes matched those that Gloria was described as wearing when she left the house with the petitioner. T. (3/25/87) at 17-19, 20; T. (4/6/87) at 930.
 None of the victims internal organs remained and only a small amount of soft tissue was left on the bones. T. (4/7/87) at 1002. The associate medical examiner, Dr. Arkady Katsnelson, explained that without flesh and organs, it is impossible to establish the track of the wounds. Id. The fourth left and right ribs of the victims skeleton were transected. Id. at 1003-07. Katsnelson opined that the transections were made by a sharp instrument such as a knife. T. (4/7/87) at 1009; T. (4/8/87) at 1017-20. He listed stab wounds to the chest as the cause of death. T. (4/8/87) at 1020. Dr. Henry Lee examined the jacket, sweater, and shirt and were consistent CT Page 11373 with a cutting or slashing. Id. at 1138. Based upon the placement and the types of holes found on the three garments, Lee opined that the victim received "cuts, stabbing, on her back center portion, the neck region, the left arm and the front right shoulder and front left shoulder and the middle portion of the rib cage area." T. (4/9/87) at 1134-35. Lee explained that when a body is found clothed, a probe can be used to determine the direction and the condition of the wounds and the cuts through the clothing and into the corpse. T. (4/9/97) at 1137. When the body and clothes are separate, and the clothes are intact, Lee can use a mannequin to reconstruct events but he will need the medical examiner's officer to provide the body's measurements. Id. When the only skeletal remains are available, such an examination is very difficult. Id. Apparently, Lee can trace the wounds through the layers of clothing but not into the corpse. Id.
 An individual named Gregory Blue testified that on October 12, 14, or 15, 1985, the petitioner asked him about "a good place to dispose of the body." T. (4/6/87) at 880. The conversation went no further because the petitioner would not pay Blue the amount of money that he wanted for such information. Id. at 880. The two men met again later in the day. At that time, the petitioner explained that he had obtained additional funds for the information. Id. at 882. Thereafter, Blue and an individual named Mitchell Henderson met with the petitioner. Id. at 883. The petitioner opened the trunk of a "greenish" Chrysler, possibly manufactured in the later 1970's, and Blue saw a body. Id. at 883-84. The men could not come to an agreement and the meeting ended. Id. at 885.
 Mitchell Henderson testified that he and Blue met with the petitioner who was inquiring about get rid of a body." T. (4/6/87) at 903. Subsequently, the petitioner opened the trunk of a 1979 or 1980, green Chrysler. When he did so, Henderson also noticed a red shoe in the car's trunk. Id. at 905-06. Some time later, both the petitioner and Henderson were incarcerated at the same facility. Id. at 906. The petitioner told Henderson that he and the victim had "a dispute over some money" and that he "cut her" in the chest. Id. at 907.
The respondent in this petition points to the testimony of Van Kirk that he characterized the state's case against the Petitioner as circumstantial, and that he would defend the CT Page 11374 petitioner by trying to show that there was insufficient evidence to prove beyond a reasonable doubt the guilt of the petitioner. Van Kirk testified he knew of the Petitioner's prior bad acts with knives, including a stabbing of his wife before in a car so he wanted not to "open the door" to that subject for the jury.
Respondent argues that failure to use a mannequin for demonstration purposes did not constitute ineffective assistance of counsel. "An experiment or test cannot be demanded as of right" 2B Holden J. Daly Connecticut Evidence (1988) § 916 pp.846-47. Respondent argues that such demonstration must be performed by a competent witness under substantially similar conditions so that the rendition is reasonably fair and accurateC. Tait J. LaPlante Connecticut Evidence (2d Ed. 1988) § 9.6pp. 283-84. In this case the petitioner failed to prove that the use of a mannequin would have affected the result inn the case. Also, the failure to call witnesses to testify is fatal to the claim of ineffective assistance of counsel without demonstrating to the Habeas Court the testimony of those witnesses. Nieves v.Commissioner of Corrections, 51 Conn. App. 615, 622-24 (1999). It is incumbent on the petitioner to explain their absence and show with some precession the content of the testimony that the witness would have given at trial. Cross v. O'Leary,896 F.2d 1099 1100 (7th Cir.). [citations omitted}.
The petitioner has failed to show that the use of the mannequin or the demonstration prejudiced the petitioner in this case.
As to the issues raised as to the blood samples there was sufficient evidence presented by Van Kirk at trial and in his final argument at trial so as not to support the claim of ineffective assistance of counsel.
The petitioner has failed to present any other evidence to support his specific claims in his petition.
There are two components to ineffective assistance of counsel (1) that counsel performance was deficient and (2) that the deficient performance prejudiced the defense. Strickland v.Washington, 466 U.S. 668, 687. Courts must decide whether counsel's performance fell below reasonable competence exhibited by lawyers with ordinary training and skill in criminal law.Giannotti v. Warden, 26 Conn. App. 125, 130 (Citations Omitted). Courts must indulge in a strong presumption that counsel's CT Page 11375 conduct falls within the wide range of reasonable professional assistance. Strickland, at 690-691.
To establish prejudice, petitioner must show there is reasonable probability but for counsel's errors the result of the underlying case would probably be different. Strickland at page 694.
The Petitioner has failed to meet his burden of proof in this case.
Petition denied.
Frank S. Meadow Judge Trial Referee