[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
STATEMENT OF THE CASE
In this habeas corpus petition, the petitioner claims ineffective assistance of trial counsel in his murder trial in 1987 and in a prior habeas corpus petition which was denied on August 16, 1999. The murder conviction was affirmed by the Supreme Court on January 17, 1989. (209 Conn. 596).
Evidence before this court includes the complete trial transcript and the prior habeas corpus trial. The trial transcript consists of over 1300 pages and contains the testimony of over 40 witnesses.
Under ordinary circumstances, the denial of the prior habeas corpus petition would preclude inclusion in this case of any attack on the performance of trial counsel. In this instance, however, because the claim against prior habeas counsel is that he, in effect, neglected to explore several aspects of the conduct of the defense which would have made a difference in that first habeas proceeding, the court must go beyond that matter and reconsider the actual trial.
 STANDARD OF REVIEW
In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test to be applied in evaluating claims of ineffective assistance of counsel. In addition to being deficient, that is, not within the range of competence of lawyers with the ordinary skill and training in criminal law, the deficient performance must have prejudiced the defense.
Connecticut courts have addressed this test and elaborated upon a petitioner's burden in asserting such claims:
"The right of a defendant to effective assistance is not, however, the CT Page 3259 right to perfect representation. State v. Barber, 173 Conn. 153, 159-60,376 A.2d 1108 (1977); Chance v. Bronson, 19 Conn. App. 674, 678,564 A.2d 303 (1989). He must also show `that this lack of competency contributed so significantly to his conviction as to have deprived him of a fair trial.' Herbert v. Manson, 199 Conn. 143, 144-45, 506 A.2d 98
(1986). The reviewing court must employ a strong presumption of the reasonableness of that counsel's assistance. Levine v. Manson, supra, 640; Chance v. Bronson, supra, 678. The assistance must be viewed in light of the circumstances that existed at the time, and not with either the benefit or the distortions of hindsight. Levine v. Manson, supra. Even if that assistance is found to have been lacking in competency, the petitioner bears the further burden of showing that there is a reasonable probability that, were it not for the deficiency of counsel, the result of the trial would have been different. Aillon v. Meachum, 211 Conn. 352,357, 59 A.2d 206 (1989)." Williams v. Bronson, 21 Conn. App. 260, 263
(1990). Further, strategic or tactical choices of counsel are not subject to challenge. (Strickland, supra). The petitioner's claims must be evaluated in light of these standards.
 DISCUSSION As To The Performance Of Trial Counsel I
The petitioner cites three areas where the performance of trial counsel was "substandard," the first of which pertains to the testimony of Mitchell Henderson and Gregory Blue. The petitioner argues that the incident to which they testified, their viewing of a body in the trunk of the victim's car, "could not have happened."
In support of this contention, he states that when the victim's children put the laundry in the trunk on the day of her disappearance (October 13, 1985) at about 3 P.M., there was no body. Thus, when Henderson and Blue claimed to have seen the body in the trunk in the evening on either October 13, 14, or 15, they were lying and the episode could not have occurred.
The obvious weakness to this argument is that it assumes that since the body was not in the trunk when the children put the laundry there, it was never there. The prosecution's evidence permitted the jury to reason that the petitioner put the body in the trunk after the laundromat visit. This renders the testimony of Henderson and Blue quite plausible, particularly with Henderson noticing a red shoe and describing the body of a black female wearing a burgundy colored brassiere. CT Page 3260
The victim had worn red shoes prior to her disappearance and such an item was recovered near where the body was found. It is highly unlikely that Mr. Henderson remembered that the description of the victim put out by the police in their "missing person" bulletin mentioned these red shoes, thereby enabling him to enhance his testimony.
That same missing persons description made no mention of a red brassiere, yet both Mr. Henderson and Mr. Blue testified that the body they saw in the trunk was clothed in part in a red brassiere. They would only know this detail from having seen the body so clad.
As part of the criticism of trial counsel on this fact of the case, the petitioner argues that counsel's cross examination of the victim's children was incomplete and that he failed to demonstrate that Henderson and Blue's testimony was irreconcilable with theirs.
Actually, that is not the case at all. Counsel showed what he set out to show — that there was no body in the trunk in the afternoon and that Henderson and Blue were lying because of the motives they had to please the prosecution.
Counsel could not change the testimony elicited from the witnesses and absence of the body at the laundromat could not establish it was never in the trunk for Henderson and Blue to see at a later time.
Finally, in assessing this claim, the court notes that much of the claimed substandard activity alleged reflects a disagreement with the tactics of trial counsel. As such, they are not subject to challenge under Strickland.
 II
The petitioner's next claim is that trial counsel should have hired an expert "to do a demonstration with a skeleton to show that he as a lefthander could not have done the damage to the (sic) Gloria's bones."
This is an extraordinary proposition, to say the least, suggesting the obvious riposte that he could have used is right hand!
The next hurdle for the petitioner on this claim is that at no time did he demonstrate that there was evidence of an exculpatory nature which an expert, if called, would have presented. The failure to show that this evidence existed and would have been relevant defeats this argument.Nieves v. Commissioner of Correction, 51 Conn. App. 615, 623-24 (1999). CT Page 3261
Trial counsel apparently explored the question of cause of death and the injury posited by the state. In his testimony before this court, he stated he had conferred with the chairman of the anthropology department at the University of Connecticut and discussed with him the testimony of the state's witness on these issues. However, he had no recollection of discussing a test to be performed on a skeleton.
Bearing in mind that the petitioner at trial and in his two habeas corpus denied being the victim's assailant, the court is hard pressed to imagine what evidence he envisions changing the outcome of the trial.
The state's experts did not identify the petitioner as the assailant. They reported on the cause and the approximate time of death. Even if a defense witness were to disagree and say the victim was not stabbed with a knife, we would still have a homicide and all the evidence still pointing to the petitioner.
Criticism of counsel's cross-examination will be addressed in the court's evaluation of his overall trial performance.
 III
The petitioner also alleges he was prejudiced by his trial counsel's failure to call as an alibi witness one Phillip Watts. Trial counsel had no recollection of a discussion of this witness, but the petitioner has not, in either habeas corpus action, presented evidence to support his claim. In brief, no one knows what, if anything, in the nature of an alibi could have been produced at trial. No prejudice has been demonstrated.
"The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." Nieves, supra, citing State v. Talton, 197 Conn. 280, 297
(1985).
Having read the trial transcript, the court is compelled to comment on the value of the testimony of this witness, one Phillip Watts, had he testified.
Both Mr. Blue and Mr. Henderson and one Constantine Stevens placed Mr. Watts at the Stevens' apartment when the petitioner purportedly appeared and spoke about disposing of a body. The evidence suggests he observed this visit and overheard the conversation. It would take a courageous or CT Page 3262 foolish defense lawyer to call Mr. Watts to the stand in view of the cross-examination that would likely follow.
 IV
The petitioner offered the testimony of an experienced criminal trial attorney, Norman Pattis. He represented the petitioner on the appeal of the earlier habeas corpus denial. He did not review the evidence or the trial transcript for this testimony but he had read it in full earlier. He could not say it was prejudicial not to have an expert. Later in his testimony he said it would have been prejudicial and below the standard of care not to use an expert who would contradict the state. With this statement the court agrees, but having consulted with an expert and lacking the evidence to contradict the state, trial counsel appears to have exhausted his limited options.
The court finds the petitioner's claim on this issue bordering on the frivolous. In effect it sums to be: I am not guilty of the crime, but the state is mistaken on the cause of death. She was not stabbed with a knife.
This scenario sums to require the conclusion that if the state's evidence is in error and the victim's wound was not a knife wound, the petitioner cannot be guilty!
The expert testimony does not support the allegation of a trial effort below the standard of care.
 V
In view of the petitioner's attacks on trial counsel's performance in various areas, the court turned to the trial transcript and the decision of our Supreme Court on the appeal. To appreciate trial counsel's burden in this case, one need only refer to the Supreme Court's decision affirming the conviction where at page 609 the court states:
The evidence against the defendant, including other displays of consciousness of guilt, was so overwhelming that the admission of his reaction to Kumnick's few questions pales by comparison.
State v. Pittman, 209 Conn. 596 (1989).
The court found numerous examples of effective trial effort on the part of trial counsel. Probably the most surprising and significant was getting the trial judge to reverse his earlier ruling with respect to CT Page 3263 excluding evidence of prior bad acts.
And, this petitioner had a plethora of "bad acts" to guard against. Counsel also vigorously objected to testimony about the petitioner's liquor sale as consciousness of guilt. He kept out prior bad acts involving the use of a knife and his use of drugs. He impeached defense witnesses and clearly established the absence of a dead body in the trunk of the car before Henderson and Blue claimed to have seen it.
On this point, the petitioner is critical of counsel for not using more cross-examination of the victim's young children. This court has done a fair amount of criminal defense work and one can't imagine a more sensitive subject than that of appearing to be harsh on child witnesses. Here, the victim's children were especially sympathetic subjects and a jury is not going to embrace a lawyer who appears to be "picking" on them. Counsel did what he had to do to establish his point — a point only the petitioner seems to find of great significance.
Counsel effectively objected to and kept out evidence of bad checks negotiated by the petitioner and adequately explored the charges pending against the state's witnesses so that he could argue later, as he did, that they had a motive to testify as they did.
He also did a thorough cross-examination of the medical examiner in an attempt to create some doubt in the juror's minds. An examination of this testimony reveals a fairly simple and straightforward factual picture with no "smoking gun" for the petitioner to exploit with the speculative notions advanced here.
The petitioner was also critical of his counsel's preparation and of the lack of opportunity to discuss the case. He wanted to put more emphasis on the children's testimony — a subject discussed above. He admitted that he spoke with his counsel daily at trial and does not indicate what if any evidence was ignored or overlooked.
The petitioner's repeated emphasis on the testimony of Henderson and Blue is puzzling to say the least. Counsel established their inability to state on which evening they claim they saw the body. In the trial appeal, the subject of their records was addressed and the court found harmless error in the trial court's limitation of Blue's cross-examination. It went on to say that:
The defendant on cross-examination, however, took full advantage of the opportunity afforded him to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately CT Page 3264 draw inferences relating to the reliability of the witness.
State v. Pittman, supra, at page 603.
The court concludes that, faced with an insurmountable task, trial counsel made the most of a deplorable situation. Habeas counsel notes that the jury was out for several days. This is remarkable in a case with irrefutable scientific evidence and a defendant who left a trail of incriminating statements and actions in his wake.
Trial counsel's recital of the "contradictions" in the state's case, though not acceptable to the petitioner, apparently had the jury's attention.
The claim of ineffective assistance of trial counsel has no merit and the petitions as to that claim is denied.
 VI
The court's conclusions and decision above necessarily dictate the conclusion that the claim of ineffective assistance of the first habeas counsel must also be denied.
That counsel testified that he did not feel there were any meritorious claims to advance in the first habeas. As the court noted above, he was correct.
Any claim that a successful attack on the state's expert's opinion as to the transacted rib would exonerate the petitioner is sheer speculation.
Assuming Phillip Watts would account for the petitioner's every minute on October 13, 1985, who would believe him in the face of voluminous evidence to contradict him? And what would he say about his presence at Ms. Stevens' apartment at a later date?
Though he doesn't seriously suggest his trial counsel could have excluded the testimony of Henderson and Blue, but removing them from the case and adding Watts with his alibi testimony, we are left with a solid case for conviction.
Any other result would be an aberration unless one decides all the disinterested witnesses who testified were enlisted by the police to weave this web of guilt around the petitioner. CT Page 3265
This scenario is sheer fantasy and fails to acknowledge an excellent criminal investigation comprising mostly circumstantial evidence.
 CONCLUSION
The petition is denied and judgment may enter for the respondent.
 Anthony V. DeMayo Judge Trial Referee
CT Page 3266